IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CORRIE WALLACE, and <br> RAVAEL E. SANTOS, JR., <br><br> **Plaintiffs,** <br><br> v. <br><br> JOHN BALDWIN, *et al.*, <br><br> **Defendants.** | Case No. 18-cv-1513-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendants' Motion for Summary Judgment on Exhaustion of Administrative Remedies (Docs. 155 and 156). Plaintiffs Rafael Santos, Jr. ("Santos") and Corrie Wallace ("Wallace") filed a response (Doc. 164), and Defendants filed a reply (Doc. 165).[1] The Court held an evidentiary hearing on January 28, 2021.

## BACKGROUND

On August 17, 2018, Plaintiffs Rafael Santos, Jr. and Corrie Wallace, inmates of the Illinois Department of Corrections ("IDOC") who are currently housed at Menard Correctional Center ("Menard"), filed their original Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 alleging that at various times they have been housed in constitutionally deficient cells located within the North I and North II cell houses at Menard. Plaintiffs, who are represented by counsel, are proceeding on their Third Amended Complaint

---

[1] After considering Local Rule 7.1(c), the Court will consider Defendants' reply.

(Doc. 143), a purported class action, which includes the following claims:

> Count I: Claim for permanent injunctive relief against Rob Jeffreys in his official capacity as the Director of IDOC and Anthony Wills[2] in his official capacity as the Warden of Menard, seeking an order permanently preventing IDOC from double-celling inmates in the North I and North II cell houses.
>
> Count II: Claim for permanent injunctive relief against Rob Jeffreys in his official capacity as the Director of IDOC and Anthony Wills in his official capacity as the Warden of Menard, seeking an order requiring IDOC to fix the ventilation in the North I and North II cell houses such that the cells are adequately heated. In the alternative, if such repairs are impossible or impractical, Plaintiffs seek an order barring IDOC from housing inmates in the North I and North II cell houses.
>
> Count III: Eighth Amendment claim against John Baldwin, Jacqueline Lashbrook, Alex Jones, Jeffery Hutchinson, Rob Jeffreys, and Kimberly Butler in their individual capacities, seeking compensatory and punitive damages for the unconstitutional conditions of confinement in North I and North II.
>
> Count IV: Eighth Amendment claim against John Baldwin, Jacqueline Lashbrook, Alex Jones, Jeffery Hutchinson, Rob Jeffreys, and Kimberly Butler in their individual capacities, seeking nominal and punitive damages for the unconstitutional conditions of confinement in North I and North II (alternative to Count III).

Defendants contend that Santos failed to exhaust his administrative remedies as to all claims because (1) the grievance dated June 21, 2017 that Santos claims he submitted was never submitted and, in the alternative, the grievance was not sufficiently detailed and (2) the grievance dated December 25, 2018 that was received by Menard's grievance

---

[2] Anthony Wills was substituted for Alex Jones as an official capacity defendant in Counts I and II pursuant to Federal Rule of Civil Procedure 25(d) (Doc. 169). At the time of substitution, Anthony Wills was the Acting Warden of Menard. *Id.*

office was procedurally deficient.

Defendants concede that Wallace exhausted his administrative remedies with respect to his official capacity claims in Counts I and II, and with respect to the claims directed against Lashbrook and Baldwin in their individual capacities in Counts III and IV. Defendants claim, however, that Wallace failed to exhaust his administrative remedies as to the individual capacity claims directed against Butler, Hutchinson, Jeffreys, and Jones in Counts III and IV. With respect to these claims, Defendants argue that the grievance submitted by Wallace, dated January 12, 2018, could not have exhausted individual capacity claims directed against Butler, Hutchinson, Jeffreys, or Jones for their role as former wardens of Menard, because none of these officials was employed as the warden of Menard at any time during the 60-day period preceding Wallace's January 2018 grievance. *See* Ill. Admin. Code § 504.810(a). Defendants further contend that, for the same reasons, the June 21, 2017 grievance allegedly submitted by Santos could not have exhausted any claims directed against Butler, Hutchinson, Jeffreys, or Jones in their individual capacities.

Plaintiffs contend that the exhaustion requirement does not apply to them because other inmates, such as Gregory Turley (Case No. 3:08-cv-00007-SCW), previously filed grievances and lawsuits involving the same conditions at issue in the instant case. According to Plaintiffs, these prior grievances and/or lawsuits put certain defendants on notice of the conditions at issue in this case and relieved Plaintiffs of the duty to exhaust because the administrative process was unavailable to them and/or because inmates need not submit redundant grievances about ongoing conditions. Defendants disagree,

arguing that that the grievance process did not become unavailable or duplicative to Plaintiffs merely because a different inmate previously complained about the same conditions at Menard.

Alternatively, Santos contends that the grievance he allegedly submitted in June 2017 is sufficient to exhaust administrative remedies as to the claims at issue in this action. Santos did not raise any argument regarding the grievance dated December 25, 2018. Additionally, neither Plaintiff addressed Defendants' argument regarding the individual capacity claims directed against Butler, Hutchinson, Jeffreys, and Jones in Counts III and IV.

## PRELIMINARY MATTER

Prior to assessing whether each Plaintiff has exhausted his administrative remedies with respect to the claims at issue in this case, the Court addresses a preliminary matter as to Rob Jeffreys. On November 14, 2019, pursuant to Federal Rule of Civil Procedure 25(d), Jeffreys was substituted as an official capacity defendant in Counts I and II.[3] On April 8, 2020, Plaintiffs filed their Third Amended Complaint naming Jeffreys as a defendant in his individual capacity in Counts III and IV (Doc. 143). Plaintiffs, however, have not served Jeffreys for the claims alleged against him in his individual capacity, and counsel has only appeared for Jeffreys in his official capacity (Doc. 156 n.1). [4]

---

[3] The Court substituted Rob Jeffreys, as the Acting Director of IDOC, for John Baldwin (Doc. 110).
[4] At the evidentiary hearing, Plaintiffs' counsel indicated he would serve Jeffreys with process "in short order." To date, Jeffreys has not been served with process. Plaintiffs, however, have filed a Motion for Leave to File Fourth Amended Complaint, stating that Jeffreys will be served with process if leave is granted (Doc. 172).

Because Jeffreys has not been served with process or entered an appearance in his individual capacity, he is a nonmovant with respect to Defendants' Motion for Summary Judgment as to Counts III and IV. The moving Defendants' arguments, however, apply with equal force to the claims made against Jeffreys in his individual capacity. In their Motion, Defendants contend that Santos submitted *no* grievance sufficient to exhaust the claims in the Third Amended Complaint. Additionally, Defendants argue that neither Wallace nor Santos could have exhausted any individual capacity claims directed against Jeffreys because he was not employed as the warden of Menard until May 2019—approximately two years after the Santos June 2017 Grievance, five months after the Santos December 2018 Grievance, and 16 months after the Wallace January 2018 Grievance (Doc. 156 n.4). Defendants' Motion thus provides sufficient notice that both Santos and Wallace failed to exhaust individual capacity claims as to Jeffreys. Accordingly, the Court will assess whether Plaintiffs exhausted administrative remedies as to the individual capacity claims directed against Jeffreys in Counts III and IV and, if appropriate, grant summary judgment as to those claims. *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may ... grant summary judgment for a nonmovant.").

## LEGAL STANDARDS

### A. Summary Judgment and Exhaustion

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467

(7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems

appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### B. Illinois Exhaustion Requirements

As IDOC inmates, Plaintiffs were required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust their claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the

inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal

injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

### A. Plaintiffs Must *Personally* Exhaust Administrative Remedies

Plaintiffs contend they should be excused from the exhaustion requirement because no administrative remedy was available for their duplicative cell size claims and/or because prisoners are not required to submit redundant grievances about ongoing conditions. To support this argument, Plaintiffs rely on grievances and lawsuits filed by *other* inmates. Plaintiffs contend Menard officials have an extensive history of rejecting complaints filed by other inmates pertaining to cell conditions in North I and North II, and hence pursuit of their own administrative grievances would have been duplicative or redundant. Plaintiffs also suggest that Menard's allegedly systemic denial of such grievances rendered the grievance process unavailable to them.

To the extent that Plaintiffs are arguing it would have been futile to file grievances about their cell conditions, there is no futility exception to the exhaustion requirement. *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). An inmate cannot decide unilaterally that the grievance process is unavailable and proceed directly to litigation. *See Steiskal v. Lewitzke*, 553 F. App'x 611, 616 (7th Cir. 2014) ("prisoners still must exhaust even if they believe the process will be futile"); *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 536-37 (7th Cir. 1999). Thus, Plaintiffs were required to make a good faith effort to exhaust, even if they believed the process would be futile.

Any contention that Plaintiffs should otherwise be excused from the exhaustion requirement because Menard officials were aware of and/or have previously rejected similar complaints from other inmates is equally unavailing. The case law cited by Plaintiffs regarding duplicative and/or redundant grievances does not suggest that other inmates' grievances can satisfy the PLRA's exhaustion requirement. Further, outside of the class action context, the Court has found no case law to support Plaintiffs' contention that grievances filed by third parties may satisfy this requirement. The Court, however, did locate several cases in which district courts rejected similar arguments. *See e.g., Gibert v. S.C. Dep't of Corr.*, 2019 WL 1302838, at *4 (D.S.C. Jan. 25, 2019) (other inmates' grievances cannot satisfy the PLRA's exhaustion requirement when the plaintiff himself has not pursued his administrative remedies); *Worthen v. Oklahoma Dep't of Corr.*, 2007 WL 4563644, at *1 (W.D. Okla. Dec. 20, 2007) (one prisoner's exhaustion of administrative

remedies is not sufficient to exhaust the same or similar claims filed by other prisoners; "exhaustion of administrative remedies is an individualized issue that militates against joinder"); *Elliot v. Jowers*, 2002 WL 32714551. At *1 (N.D. Tex. Sept. 16, 2002) (grievances of other inmates cannot satisfy the exhaustion requirement for plaintiff's claims).

The Court notes that, in the context of class actions, some courts have adopted a theory of "vicarious exhaustion," under which the PLRA's exhaustion requirement will be deemed satisfied for the entire class so long as the requirement has been met by at least one class member. *See* e.g., *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004); *Phipps v. Sheriff of Cook County*, 681 F.Supp.2d 899, 2009 WL 4146391, *5 (N.D. Ill., Nov. 25, 2009). The Seventh Circuit has not addressed whether vicarious exhaustion is appropriately applied in prisoner class actions. But even assuming the Appellate Court would apply the doctrine to prisoner class actions, the instant case has not been certified as a class action lawsuit, and the Court's independent research has not located any case suggesting that vicarious exhaustion extends to claims pursued by different plaintiffs in earlier filed lawsuits. This is not surprising, as the rationale for excusing exhaustion by all members of a plaintiff class is rooted in the similarity of claims and remedies as to all members of the class. *In re Household International Tax Reduction Plan*, 441 F.3d 500, 501–502 (7th Cir. 2006). That rationale is simply not present outside of the class action context.

Accordingly, for the reasons described above, the Court finds that Plaintiffs cannot establish exhaustion by relying on the grievances of different prisoners who previously pursued similar claims. Rather, to survive summary judgment on the issue of exhaustion,

Santos and Wallace must each establish that they personally exhausted the grievance process.

**B.     Exhaustion as to Plaintiff Santos**

According to Santos, the grievance "at the center" of his claims is an emergency grievance he submitted to Menard officials on June 21, 2017 by placing it in the bars of his cell during third shift (Doc. 100, pp. 2-3; Doc. 100-1; Doc. 164, p. 6). Santos claims that, after receiving no response, he submitted three follow-up letters directed to Lashbrook dated July 1, 2017, July 17, 2017, and August 4, 2017 (Docs. 100; 100-1). Santos testified that, as with the June 21, 2017 grievance, he submitted the letters by placing them in the bars of his cell during third shift. Santos further testified that he does not know who picked up the June 21, 2017 grievance or follow-up letters, and that he never attempted to resubmit the June 21, 2017 grievance. Santos also testified that he does not recall where he was housed when he wrote the June 21, 2017 grievance, but he has no reason to dispute Defendants' contention that he was housed in the east cell house. Finally, Santos testified that the June 21, 2017 grievance did not specifically relate to an emergency in the North I or North II cell houses but related generally to the living conditions he had encountered in Menard as a whole.

The records of the Administrative Review Board ("ARB") submitted by Defendants (Doc. 94-1, Doc. 94-2, and Doc. 156 p. 9) reflect that no grievances were submitted by Santos in 2017. Further, the kite log submitted by Defendants (Doc. 156-3) and the accompanying declaration of Julie Eggemeyer (Doc. 170-1) show no records exist suggesting that Santos ever submitted any of the alleged follow-up letters to Lashbrook.

The kite log does reflect, however, that Santos submitted letters unrelated to the instant lawsuit on April 13, 2017 (requesting a family visit) and July 10, 2017 (regarding "ECH/WCH swap"). Additionally, the cumulative counseling summary submitted by Defendants (Doc. 156-5) indicates that, although Santos had access to his counselor on June 26, 2017 (submitted phone list for approval) and had contact with other IDOC employees on June 22 (communication regarding offender's trust fund statement and a recently cleared check) and July 27, 2017 (communication regarding trust fund statement, aggression level, and visitation with Santos's brother), he raised no concerns about his pending emergency grievance or the conditions of his confinement.

Defendants also submitted records reflecting that Santos successfully filed an "emergency" grievance dated December 25, 2018 pertaining to his conditions of confinement (Doc. 156-4). Defendants argue, however, that Santos failed to properly exhaust this grievance (Doc. 156). Santos does not respond to this argument and does not mention the December 25, 2018 grievance at any point in his briefing.

By not responding to Defendants' argument regarding the December 25, 2018 grievance, Santos concedes that this grievance does not establish exhaustion. *See C & N Corp. v. Kane*, 756 F.3d 1024, 1026 (7th Cir. 2014); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Accordingly, the only question before the Court is whether the June 21, 2017 grievance and subsequent follow-up letters satisfy the exhaustion requirement.

Considering the record as a whole, the Court finds that Santos's claims regarding submitting the June 21, 2017 grievance and subsequent follow-up letters lack credibility. Defendants have submitted evidence showing that he never filed the subject grievance.

The ARB has no record of receiving the June 21, 2017 grievance, and no such grievance was logged in the IGRV system. Likewise, the warden kite log has no record of receiving the follow-up letters Santos allegedly wrote to the warden. The kite log does reflect that Santos submitted two other letters to the warden in 2017. Additionally, Santos's cumulative counseling records indicate that although Santos communicated with his counselor or other IDOC employees on June 22, June 26, and July 27, 2017, he did not raise any concerns about his living conditions or about his pending emergency grievance. For these reasons, the Court finds that Defendants have submitted sufficient evidence to show that Santos did not file the June 21, 2017 grievance, and he did not submit the alleged follow-up letters to the warden. Moreover, the Court finds there is no credible evidence suggesting that Santos filed the June 21, 2017 grievance or sent the alleged follow-up letters to the warden.

Accordingly, the Court finds that Santos failed to exhaust his administrative remedies and will therefore dismiss all of his claims without prejudice.

### C.     Exhaustion as to Plaintiff Wallace

Defendants concede that Wallace's grievance, dated January 12, 2018, is sufficient to exhaust his administrative remedies with respect to Counts I and II (official capacity claims against Jeffreys and Wills), and with respect to the claims directed against Lashbrook and Baldwin in their individual capacities in Counts III and IV.

Defendants contend, however, that the January 12, 2018 grievance cannot serve to exhaust Wallace's claims directed against Butler (former warden of Menard from April 2014 through October 2016), Hutchinson (former warden of Menard from October 2016

through December 2016), and Jones (acting warden of Menard in January 2017 and warden of Menard in 2019) in Counts III and IV in their individual capacities. Also, as previously noted, Defendants also contend that the same argument prevents Wallace from exhausting any individual capacity claims directed against Jeffreys (warden of Menard in May 2019). According to Defendants, it is impossible for the grievance to count towards exhausting administrative remedies related to the individual capacity claims against Butler, Hutchinson, Jones, or Jeffreys because they were not employed at Menard at any time during the 60-day period before the January 12, 2018 grievance. *See* 20 Ill. Admin. Code § 504.810(a) (a written grievance must be filed within 60 days of the date the inmate discovers the incident, occurrence, or problem giving rise to the grievance). Additionally, Defendants contend that the grievance cannot reach into the future to exhaust claims that arose when Jones and Jeffreys were employed at Menard in 2019.

In responding to Defendants' Motion for Summary Judgment, Wallace did not address this argument. At the hearing, counsel acknowledged that he failed to respond to this argument but claimed that, despite the failure to submit a grievance, the individual capacity claims are valid because, at some point, Wallace was housed in North I and North II.[5]

The Court finds that Wallace could not have exhausted his administrative

---

[5] At the hearing, the parties stipulated that Wallace did not submit a grievance concerning the matters that are the subject of this lawsuit prior to January 12, 2018, and that Santos did not submit a grievance concerning the matters that are the subject of this lawsuit prior to June 21, 2017. Counsel for Plaintiffs further stated that he was not introducing any new evidence regarding any grievances that are not already part of the record before the Court.

remedies as to the individual capacity claims directed against Butler, Hutchinson, Jones, and Jeffreys because these officials were not employed at Menard at any time during the 60-day period before the January 12, 2018 grievance. *See* 20 Ill. Admin. Code § 504.810(a). Further, as to Jones and Jeffreys, Wallace's grievance cannot serve to exhaust claims regarding conduct that occurred approximately one year after the grievance was filed. *See,* e.g., *Palmer v. Fenoglio,* 510 F. App'x 476, 478 (7th Cir. 2013) (grievance submitted before inmate ever saw defendant doctor could not have challenged the doctor's conduct a month later). Alternatively, the Court finds that Wallace forfeited any argument on this issue. He did not respond to the argument in his briefing, and counsel's attempt to address the matter at the hearing was perfunctory and undeveloped. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

For these reasons, the Court finds that Wallace failed to exhaust his administrative remedies with respect to the individual capacity claims directed against Butler, Hutchinson, Jones, and Jeffreys in Counts III and IV and therefore will dismiss these claims without prejudice.

## Conclusion

For the reasons set forth above, the Court:

- **GRANTS** Defendants' Motion for Summary Judgment on Exhaustion of Administrative Remedies (Docs. 155);

- **DISMISSES without prejudice** Santos's claims in Counts 1 through 4 for failure to exhaust administrative remedies; and

- **DISMISSES without prejudice** Wallace's claims in Counts III and IV against

Butler, Hutchinson, Jones, and Jeffreys for failure to exhaust administrative remedies.

- **DIRECTS the Clerk to TERMINATE Santos**, **Butler**, **Hutchinson**, and **Jones** as parties in the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

- **ADVISES the parties** that the only claims remaining in this case are Wallace's official capacity claims directed against Jeffreys and Wills in Counts I and II, and Wallace's individual capacity claims directed against Lashbrook and Baldwin in Counts III and IV.

**IT IS SO ORDERED.**

DATED:   March 10, 2021

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**