IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CORRIE WALLACE and RAFAEL E. SANTOS, JR., <br><br> Plaintiffs, <br><br> v. <br><br> JOHN BALDWIN, JACQUELINE LASHBROOK, ROB JEFFREYS, and ANTHONY WILLS, <br><br> Defendants. | Case No. 18-cv-1513-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendants' combined motion for summary judgment on the issue of failure to exhaust administrative remedies (Doc. 251). Plaintiffs filed a response (Doc. 256) in opposition to the motion. On February 5, 2025, the Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008).

## BACKGROUND

This case is back on remand from the Seventh Circuit Court of Appeals (Doc. 226). Defendants originally moved for partial summary judgment, arguing that Plaintiff Santos failed to exhaust his administrative remedies as to all claims prior to filing suit, and Plaintiff Wallace failed to exhaust his administrative remedies as to Defendants Kimberly

1

Butler, Jeffery Hutchison, and Alex Jones.[1] After a hearing pursuant to *Pavey*, the Court found that Santos failed to exhaust his administrative remedies prior to filing his lawsuit, and his claims were dismissed (Doc. 175). The Court also found that Wallace failed to exhaust his claims against Butler, Hutchinson, and Jones, and his claims in Counts III and IV against those defendants were likewise dismissed (*Id.*).

Plaintiffs appealed (Doc. 191). The Seventh Circuit affirmed the Court's factual findings that Santos failed to exhaust his administrative remedies as to all claims, and Wallace failed to exhaust his remedies as to claims against certain defendants. *Wallace v. Baldwin*, 55 F.4th 535, 544-545 (7th Cir. 2022). The Seventh Circuit remanded the case, however, for a factual determination as to whether the grievance process was available to Plaintiffs as it relates to double-celling at Menard. Specifically, the Seventh Circuit directed the Court to consider whether the process was a "dead end" and thus unavailable to Plaintiffs.

On remand, Defendants filed a renewed motion for summary judgment. Defendants point to the deposition testimony of Grievance Officer Kelly Pierce who testified as to the availability of the grievance process regarding cell sizes at Menard. Specifically, Pierce testified that every grievance regarding cell sizes at Menard was investigated and reviewed on a case-by-case basis (Doc. 256-10, pp. 59-85). Inmates could potentially be placed in a single cell based on the investigation and the circumstances

---

[1] Defendants conceded that Wallace exhausted his administrative remedies with respect to his official capacity claims in Counts I and II, and with respect to the claims directed against Lashbrook and Baldwin in their individual capacities in Counts III and IV.

2

surrounding their request (*Id.* at pp. 51-53). But Pierce indicated that cell size was not an issue, noting that the prison had been approved and was in compliance with cell size (*Id.*). Thus, an inmate would not be moved, or his grievance granted, based *solely* on the size of the cell; the inmate would have to offer other reasons for needing to be single-celled (*Id.* at pp. 52-53). Defendants argue that the administration considered and responded to each grievance, making the process available to all inmates.

     Plaintiffs argue that Defendants have failed to offer any proof that the grievance process was available during the relevant time period. Plaintiffs note that it was difficult to even obtain records regarding relevant grievances, because between 2008 and 2018, there was no way to identify grievances that were filed about the size of the cell (Doc. 256-10, p. 23). Pierce testified in her deposition that the grievance log was too vague to determine the description of any particular grievance, and grievances are not scanned and stored in a centralized database (*Id.* at pp. 17, 21-23). Defendants produced a list of 154 possible cell size grievances from grievance logs (Doc. 256-6, pp. 5-8), but ultimately produced only 32 actual grievances (Doc. 256-8). The remainder of the 154 were identified by inmate name, IDOC number, and the inmate's location, but the grievances were not produced to Plaintiffs (Doc. 256-9). Plaintiffs contend that none of the grievances produced by Defendants were granted during the grievance process. Pierce also testified that of the grievances produced to Plaintiffs, none of them were "affirmed" by grievance staff (Doc. 256-10, p. 55). She also was not personally aware of any grievance regarding cell size that had been granted by the prison (*Id.* at pp. 56-57).

### A. Evidentiary Hearing

At the recent *Pavey* hearing,[2] both sides were given an opportunity to present evidence, but the parties instead relied on the deposition testimony of grievance officer Kelly Pierce. At her deposition, Pierce testified about her experience with grievances concerning double-celling issues. She testified that she could not recall if any grievance regarding the cell sizes at Menard had been granted during the grievance process (*Id*. at p. 51). Pierce noted that during the relevant time period, the cell sizes had been approved by the ACA ("American Correctional Association"), and the prison was in compliance with all statutes (*Id*. at p. 52). An inmate's grievance complaining about the size of his cell by itself would not be a reason to grant a grievance; an inmate would have to express another reason in addition to the size of the cell to be single-celled (*Id*.). Pierce testified that the prison was unable to physically make a cell bigger, but an inmate could be single-celled if he presented a medical or safety issue justifying single-celling (*Id*. at pp. 52-53). But a grievance complaining only about the size of the cell would not be granted (*Id*. at pp. 105-06). Further, Pierce testified that every grievance regarding the size of the cell was investigated because there could be reasons justifying a single-man cell such as mental health or safety issues (*Id*. at pp. 119-120).

In reviewing grievance logs from 2008 through 2018, Pierce noted that at least one grievance was deemed moot (Doc. 256-10, pp. 46-48). Although the grievance was not

---

[2] Corrie Wallace was present for the hearing, but Rafael E. Santos, Jr. was not. Counsel for Plaintiffs indicted that Santos's presence was not necessary nor would Santos be submitting testimony.

necessarily granted, Pierce testified that it could have already been resolved prior to being ruled on (*Id.*). Pierce indicated this could happen if an inmate was moved from the cell he was complaining about prior to the grievance being reviewed by grievance staff (*Id.*). Pierce testified a grievance might be deemed moot if an inmate "had complained about [the] cell size in North [1] or [2], but then by the time [they] reviewed their grievance…they were moved to a different [part of the prison where] the cell sizes are bigger" (*Id.* at p. 49). She noted that the logs did not indicate whether an inmate was ultimately moved from a cell he was complaining about, and the logs were too generic to determine whether an "affirm," "denied," or "moot" meant that an inmate was moved or not (*Id.* at p. 54). In other words, Pierce could not determine from the logs whether an inmate was given a single cell, moved to another cell, or remained in the original cell (*Id.* at p. 55, 133-34). Of the 32 grievances that were ultimately produced to Plaintiffs, Pierce acknowledged that none of those grievances were granted or affirmed (*Id.* at pp. 58-85). She did note that one inmate, Steve Liddell, requested to be single-celled because he had a lot of enemies (*Id.* at p. 65; Doc. 256-8, p. 23). Although the grievance was denied, Liddell was already in a single-man cell. The grievance noted that he was also approved for double-celling (*Id.*). Pierce noted that the majority of the grievances did not specifically complain about the size of the cell, but rather sought to be in a single-man cell for a variety of reasons (Doc. 256-10, pp. 65-66). She noted that without viewing the entirety of a grievance, it was difficult to determine the exact nature of the grievance (*Id.* at p. 66).

Further, Pierce noted that despite Liddell's grievance being denied, steps were still taken to address his concerns (*Id.* at p. 123). In Liddell's case, he was instructed to contact

5

his case worker to discuss his "keep separate from" list and concerns about his safety (*Id.*). Pierce acknowledged that even though the grievance logs might state that a grievance was denied, the logs would not reveal whether the inmate was provided some form of relief (*Id.*). Pierce pointed to another grievance from an inmate that she denied but noted that she had thoroughly investigated the claims (*Id.* at pp. 125-127). The grievance noted that she spoke to the cellhouse major about the conditions of the cell and also spoke to the sanitation officer about the cleaning schedule and access to cleaning supplies (*Id.* at pp. 125-127; Doc. 256-8, p. 38). Similarly, a grievance from Uvion Junior was denied because the cell sizes were compliant with ACA standards and the *Rasho* agreement, but the inmate was encouraged to speak to mental health staff about his specific concerns about his mental health in light of his current cell assignment (Doc. 256-10, p. 128-129; 256-8, pp. 69-71).

Pierce also testified about the tracking and record keeping in regard to grievances. She testified that grievances are only kept in paper format in an inmate's Masterfile (Doc. 256-10, pp. 16-17). They are not scanned into a computer or stored in a central location (*Id.* at p. 17). An inmate's grievance file follows him from each institution (*Id.* at p. 16). As of 2019, however, codes were added to the grievance logs to better track the kinds of issues that the prison was experiencing (*Id.* at pp. 14-15). Cell size was one of the codes created for the logs, but from 2008 through 2018, there were no codes to identify grievances about cell sizes (*Id.* at pp. 15-16). Pierce testified that it is nearly impossible to locate all of the grievances about the cell sizes at Menard from 2008-2018 because the grievances are not coded for any issues (*Id.* at pp. 18-19). And the grievances that were

6

coded may not have the same codes, if cell size was just one of the issues in their grievance (*Id.* at p. 19. 21-22). Any search would fail to yield all of the grievances regarding cell sizes (*Id.* at p. 19). Further, the logs at the time were too vague to adequately identify all of the cell size grievances (*Id.* at pp. 20-21). Pierce was also unable to tell from the logs or the grievances provided whether the individual appealed to the Administrative Review Board ("ARB") or the result of that appeal (*Id.* at pp. 140-141).

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.

7

2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As IDOC inmates, Wallace and Santos were required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to

properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"] within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin.

Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## Analysis

The sole issue before the Court is whether the grievance process was available to Plaintiffs, such that they had an "available remedy" for double-celling. The process is available when it is "capable of use to obtain some relief for the action complained of." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quotations omitted). The grievance process is considered unavailable when, among other things, "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. The Seventh Circuit stated that it had not yet encountered this "dead end" process, but noted the example given in *Ross* where a prison handbook "directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions." *Wallace*, 55 F.4th at 542 (citing *Ross*, 578 U.S. at 643). In that situation, the procedure is not capable of providing relief. *Ross*, 578 U.S. at 643. The Seventh Circuit noted that "where the relief offered through the prison grievance process is illusory, then there are no administrative remedies available," and exhaustion is not required. *Wallace*, 55 F.4th at 543 (quotations omitted).

The unavailability exception to the grievance process is a narrow one. *Wallace*, 55 F.4th at 543 (citing *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)). Defendants bear the burden of demonstrating that the grievance process was available, and Plaintiffs failed to utilize it. *Crouch*, 27 F.4th at 1320. The Seventh Circuit noted that demonstrating that the grievance process was a dead end

is a tall task. *Wallace*, 55 F.4th at 543. They cited several cases to help analyze the dead end argument.

For instance, in *Barradas Jacome v. Attorney General United States*, 39 F.4th 111, 121 (3rd Cir. 2022), the Third Circuit found that legal challenges to expedited removal cases were effectively a dead end where the Department of Homeland Security could not cite to a single favorable response to a legal challenge by an alien. In *Donahue v. Wilder*, 824 F. App'x 261, 266 (5th Cir. 2020), the Fifth Circuit noted that plaintiffs seeking to avail themselves of the dead end argument had to demonstrate that officials "are unable or consistently unwilling to provide any relief." And, in *Kee v. Raemisch*, 793 F. App'x 726, 736 (10th Cir. 2019), the Tenth Circuit noted that the plaintiff failed to cite to any evidence of other aggrieved inmates, and the record demonstrated that officials investigated his claims when properly submitted.

But the bar for whether a remedy is available is low and requires only the showing of a "possibility of some relief." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 82 (2d. Cir. 2021) (citing *Ross*, 578 U.S. at 643). As Defendants point out, inmates must pursue the remedy process "[e]ven when the prisoner seeks [only] relief not available in grievance proceedings" such as monetary damages. *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Simply put, there is no evidence that the grievance process at Menard during the relevant time period was a dead end with respect to the issue of double-celling or cell size. Plaintiffs urge the Court to find that the grievance process was a dead end because none of the 32 grievances submitted to them were affirmed in favor of the inmate, and it

did not appear that the other grievances presented in the logs were granted. They also point to Kelly Pierce's testimony that a grievance would not be granted solely on the basis of the size of the cell occupied by the inmate. Plaintiffs argue that there was no evidence that any inmate could receive relief for their complaints about cell size because Pierce testified that the cell sizes were compliant, and the size alone was not a basis for a remedy.

But Plaintiffs misstate Pierce's testimony. Pierce testified that the size of the cell could not be changed, but other remedies were available. An inmate could be single-celled if he presented issues that he claimed were caused by the double-celling. Further, inmates were often offered other remedies for their concerns. For example, in the response to inmate Liddell's grievance, he was directed to contact his case worker about safety concerns. Similarly, Uvion Junior was directed to contact mental health and the healthcare unit about his alleged health issues caused by his celling situation (Doc. 256-8, p. 71). Even when a grievance was denied, the grievance officials investigated every claim. When reviewing Eric Henry's grievance about his cell, Pierce noted that she spoke to the cellhouse major about the conditions of the cell, the sanitation officer about access to cleaning supplies, and inquired about extermination services (*Id*. at p. 38). Although these individuals were not offered a single-man cell or a bigger cell, they were offered other remedies. And they received responses to their grievances. Clearly, inmates at Menard had access to "available remedies." Inmates might not have had access to the remedy that they wanted, but there is simply no evidence that the prison was unwilling to provide *any* remedy. *Ross*, 578 U.S. at 643.

Plaintiffs' argument amounts to a futility argument. They allege that because they were not going to receive a bigger cell or be single-celled if they complained about the size of their cell, the grievance process was a dead end. But there is no futility exception to exhaustion. *Dole*, 438 F.3d at 808-09 (citing *Booth v. Churner*, 532 U.S. 731 (2001)). An inmate is required to exhaust his administrative remedies "even if the prisoner is requesting relief that the relevant administrative review board has no power to grant… or if the prisoner believes that exhaustion is futile." *Dole*, 438 F.3d at 808. Plaintiffs may not have been able to receive a bigger cell, but they were still required to exhaust their administrative remedies under the PLRA.

Plaintiffs seem to rely heavily on *Barradas Jacome v. Att'y Gen. United States*, 39 F.4th 111, 121 (3rd Cir. 2022), arguing that of the grievances that they received, none of them were favorable. They further argue that Defendants were unable to provide a single cell size grievance that had been granted during the relevant time period. But in *Jacome*, the Third Circuit noted that out of the "legion" of expedited removal cases for illegal aliens, it could not find "a single favorable response to a legal challenge" to the process. *Id*. But Plaintiffs here fail to point to a legion of grievances. They submitted 32 grievances at a single stage of the grievance process. As Pierce testified, there was no indication from the grievances in the record whether those grievances were appealed to the Administrative Review Board or, if they were, what the result was (Doc. 268-10, pp. 140-41). Further, the grievance logs did not reveal the nature of all the grievances or if any type of relief was provided to an inmate. Pierce testified that although a grievance might be listed in the

14

log as "denied," the logs were too generic to determine what relief, if any, an inmate received (*Id*. at p. 54).

The Court recognizes that discovery in this case was very difficult. IDOC uses an antiquated, paper system. The grievances are only kept in an individual's Masterfile and are not scanned into a computer (Doc. 256-10, pp. 16-17). The grievances were not coded in the logs from 2008 through 2018, and those that received coding after 2019 would not necessarily capture all of the cell size issues (*Id*. at p. 23). Pierce testified that it would be impossible to obtain all grievances related to cell size. But even out of all the grievances and logs produced, there is simply no evidence that inmates were denied the possibility of any relief. Pierce testified that although the grievances presented to her were denied, it did not necessarily mean that no relief was provided. Further, at least one grievance was deemed moot, meaning that the inmate's circumstances had already changed prior to a review by the grievance officials. And there were several grievances in the record that were technically denied, but for which the inmate received some sort of relief. Thus, the grievance process at Menard was not "illusory"—inmates had access to the process and the possibility of some relief. There is no evidence that it was a dead end. The grievance process at Menard was clearly available to Plaintiffs and, as such, they were required to exhaust their administrative remedies prior to filing their lawsuit. As the Court previously found, Santos failed to exhaust his administrative remedies on all claims, and Wallace failed to exhaust his claims as to Defendants Kimberly Butler, Jeffery Hutchison, and Alex Jones.

## CONCLUSION

For the reasons stated above, Defendants' combined motion for summary judgment on the issue of failure to exhaust administrative remedies (Doc. 251) is **GRANTED**. Santos's claims against all defendants are **DISMISSED without prejudice**. Wallace's claims against Butler, Hutchinson, and Jones are **DISMISSED without prejudice**. The case will proceed only on Wallace's official capacity claims directed against Jeffreys and Wills in Counts I and II and Wallace's individual capacity claims directed against Lashbrook and Baldwin in Counts III and IV.

The parties are **DIRECTED** to meet and confer and present the Court with a final scheduling order to complete discovery on the merits in this case and to submit a joint proposed scheduling order to the Court by **March 21, 2025**. The proposed order should be emailed to NJRpd@ilsd.uscourts.gov.

**IT IS SO ORDERED.**

DATED:  February 21, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**